Argued April 26, affirmed as modified July 5, 1978

PICK, *Claimant, Petitioner,*
*v.*
BROADWAY CAB CO., *Respondent.*
(Nos. 76-1723 and 76-4261, CA 9838)

580 P2d 1075

Dan O'Leary, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Charles Paulson, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

GILLETTE, J.

**GILLETTE, J.**

In this Workers' Compensation case, the sole issue is the degree of compensability. Claimant, a 52-year-old cab driver who had previously had two spinal fusions, suffered a further back injury while on the job. The injury was diagnosed as lumbosacral sprain. The referee found the claimant to be permanently and totally disabled. The Workers' Compensation Board, one member dissenting, reduced the award to 256 degrees (80%) permanent partial disability. Claimant seeks review of Board's order.

After a *de novo* review of the record, we adopt virtually the entire opinion of the referee which stated in pertinent part as follows:

"(1) Claimant is a 52-year-old workman with an eighth-grade education. His work experience includes log truck driver, photographer, cook, doughnut sales route, mill work, and cab driver. Subsequent to an industrial injury in the mid-sixties, he was trained as a welder but was unable to work in that occupation.

"(2) Claimant sustained an industrial injury in 1965 or 1966, following which he submitted to surgery on two occasions for back fusion. After convalescence and recovery, he tried welding, which was unsuccessful. He then cooked for a short time on a tug, but the motion of the tug bothered his back. He was then on a doughnut route for about a year and a half. That business closed and he returned to cab driving.

"(3) Claimant sustained a compensable injury August 18, 1975 while removing suitcases from his cab. As he stepped up on the curb he slipped and either fell to his knees or wrenched his back without falling. In any event he was diagnosed as having a lumbosacral strain. At the time of the industrial injury he had been employed as a cab driver for three years.

"(4) Various conservative treatment measures were utilized during the course of this claim. Claimant wears a back brace and uses a cane. He uses Tylenol 4 and Valium almost every day.

"(5) Claimant testified he is unable to sit or stand very long. He can lift items from table height, but is

unable to bend to do any lifting. If he remains relatively quiet all day he doesn't have much of a problem. Almost any activity causes his discomfort to increase and also causes cramps in his legs and feet that night.

"(6) Claimant testified that although he had some discomfort in his back after the fusion, but before this industrial injury, the pain was not of sufficient magnitude to preclude him working. He was on the job most of the time working eight to ten-hour shifts. He tried cab-driving subsequent to this industrial injury but was unable to continue.

"(7) Dr. William Parsons, neurosurgeon, records in his reports his opinion this workman is not employable.

"(8) In September 1976 claimant was evaluated at the Disability Prevention Division. While there it was determined claimant's functional limitations included,

'No lifting greater than 10-15 pounds. No sitting more than 1/2-3/4 hour without break. Should avoid repeated bending or stooping. No overhead work.'

It was also determined he was unable to work as a cab driver or as a truck driver or in sawmill work. It was felt he would have difficulty in a new learning situation. His reading is below average as is his visual motor coordination and social judgment. One of the physicians at the Disability Prevention Division opined claimant would be unable to return to work because of the severe nature of his pain. The counselor did not feel claimant was employable nor that it was feasible to extend any type of services to claimant.

"(9) Claimant testified he hasn't tried any other work nor has he looked for any, because of his physical condition. He is able to do a little housework but can't be on his feet very long at a time. Claimant testified he does a little grocery shopping and a little visiting but he generally is not away from the house for more than an hour.

"ORS 656.206 defines permanent total disability as,

'(a) "Permanent total disability" means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the workman from regularly performing any work at a gainful and suitable occupation.'

[ 222 ]

"In light of this workman's physical condition, I am unaware of any job he could perform. He can't sit up very long, nor can he stand very long. He isn't able to lift anything in a bending position—and even at that has a limitation of a 15-pound maximum for the lifting he can do. He uses medication almost daily for relief of his painful symptomatology. As long as he remains relatively sedentary he has 'good' days. Activity causes increased symptomatology—with cramps in the lower extremities at evening. Where is the employer who will hire this man with these limitations and restrictions?

"This Referee has had occasion to mention in previous Opinions and Orders that the workperson did not have the appearance of pain—when testifying of constant or frequent painful discomfort. In the instant case, the workman's appearance is one of a person either in pain or fearful of precipitating pain by physical movement. I believed claimant when he testified he is in pain almost every day.

"This workman was limited before he came to work for this employer. He had painful symptomatology before this industrial injury. However, the difference is that prior to this industrial injury he was able to work as a cab driver (putting in many long-hour shifts) and subsequent to this industrial injury he is unable to do such work.

"Some of the medical reports indicate this man's disability is 25% to 34%. However, that evaluation is on the basis of physical impairment and is not on the basis of the workmen's loss of future wage-earning capacity. It doesn't avail a workman very much to have a good range of motion in the skeletal parts of his body if he is unable to use that body to earn a living."

A majority of the Board, while not differing significantly with the referee's findings of fact, conclude that the claimant showed insufficient evidence of motivation and so reduced his award to 80 percent. Motivation is a factor in these cases. As we view the record made in this case, however, this complainant's latest injury is sufficiently severe that, whatever his motivation, he cannot reasonably be expected to return to gainful employment. We specifically note that his

inability to either sit or stand for lengthy periods of time appears to disqualify him from any of the formal pursuits which he once followed. The constant pain from which he suffers would make it appear that he would not be able to successfully complete a re-education program so that he might be trained for a new occupation.

The order of the Workers' Compensation Board is reversed, with instructions to reinstate the order of the referee.

Reversed and remanded.